# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7345 | **DATE** | 12/4/2003 |
| **CASE TITLE** | For Your Ease Only, Inc. vs. Calgon Carbon Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's renewed motion to compel is granted. Status hearing set for 12/16/03 at 9:45 a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 5 2004 date docketed | |
| | Docketing to mail notices. | | | 160 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 12/4/2003 | |
| hmb | courtroom deputy's initials | 03 DEC -4 PM 4:20 | date mailed notice hmb | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| FOR YOUR EASE ONLY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CALGON CARBON CORPORATION and )<br>PRODUCT CONCEPTS COMPANY and )<br>MARK SCHNEIDER )<br>)<br>Defendants. )<br>)<br>CALGON CARBON CORPORATION )<br>Counterclaim Plaintiff, )<br>)<br>v. )<br>)<br>FOR YOUR EASE ONLY, INC. and )<br>LORI GREINER )<br>Counterclaim Defendants. ) | No. 02 C 7345<br>Magistrate Judge Nan R. Nolan |

## M MEMORANDUM OPINION AND ORDER

This action involves U.S. Patent No. 6,412,628 ("the '628 patent") owned by defendant/counter-plaintiff Calgon Carbon Corporation ("Calgon"). The '628 patent relates to an apparatus for preventing formation of tarnish on metal objects. Plaintiff/counter-defendant For Your Ease Only, Inc. ("FYEO) markets and sells a product known as the "Silver SafeKeeper," which is an anti-tarnish jewelry box. FYEO seeks a declaratory judgment of noninfringement and invalidity of the '628 patent and has claims for tortious interference and unfair competition. Calgon has filed a counterclaim for infringement of the '628 patent. FYEO's Renewed Motion to Compel Production of Documents from Defendant, Calgon Carbon Corporation [112] is now before the Court. Having carefully considered the pleadings and all evidence in the record before it, the Court grants FYEO's motion to the extent described herein.

## BACKGROUND[1]

FYEO seeks production of documents withheld by Calgon on the grounds of privilege. FYEO argues that the attorney-client and work-product privileges should be pierced on the ground that Calgon committed fraud in procurement and enforcement of the '628 patent by failing to disclose relevant prior art to the examiner. In its April 24, 2003 Memorandum Opinion and Order, this Court concluded that FYEO had failed to present independent and clear evidence of fraudulent intent necessary to pierce the privileges. FYEO has now supplemented the record and renews its motion to compel with respect to the intent prong of a *prima facie* case of fraud. FYEO's renewed motion claims that Calgon failed to provide the Patent Office with material prior art that it had in its possession before and during the prosecution of the '628 patent. FYEO presents new evidence in the form of declarations from two experts in activated carbon which it claims confirms the high materiality of the CCI Brochure and further establishes that Calgon's reason for not submitting it to the Patent Office is without any merit and unbelievable.

## DISCUSSION

To establish a *prima facie* case of fraud on the Patent Office sufficient to pierce the attorney-client and work product privileges, FYEO must show the following elements: (a) a misrepresentation or concealment of a material fact, (2) an intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (3) a justifiable reliance upon the misrepresentation or concealment by the party deceived which induces him to act thereon, and (4)

---

[1] The factual background of this case has been set forth in previous decisions in this matter. *See For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 1989611 (N.D. Ill. Apr. 28, 2003), *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 21475905 (N.D. Ill. June 20, 2003); *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 21920244 (N.D. Ill. Aug. 12, 2003); and *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 22169755 (N.D. Ill. Sept. 18, 2003). The Court assumes familiarity with those facts.

injury to the party deceived as a result of his reliance on the misrepresentation. In Re Spalding Sports Worldwide, Inc., 203 F.3d 800, 807 (Fed. Cir. 2000).[2] A party challenging the attorney-client privilege must also make a *prima facie* showing that the communication was made "in furtherance of" a crime or fraud. Id.[3]

A finding of common law fraud "must be based on independent and clear evidence of deceptive intent," but FYEO need not produce direct evidence, nor enough evidence to conclusively prove fraud. In re Spalding, 203 F.3d at 807, 808. A *prima facie* case of fraud exists when the moving party presents evidence sufficient "to require the adverse party, the one with the superior access to the evidence and in the best position to explain things, to come forward with that explanation." Matter of Feldberg, 862 F.2d 622, 626 (7th Cir. 1985). Unless the party accused of fraud comes forward with a satisfactory explanation, the privilege is defeated. United States v. Davis, 1 F.3d 606, 609 (7th Cir. 1993).

A patent applicant owes the Patent Office a duty of candor and good faith. "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [Patent and Trademark] Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability . . . ." 37 C.F.R. § 1.56(a). This duty extends to the inventor and the attorney or agent who prepares or prosecutes the application. 37 C..F.R. § 1.56(c). "Information is material to patentability when it is not cumulative to information

---

[2] For purposes of this motion, Calgon does not dispute that its prior sales of activated carbon cloth and associated marketing materials qualify as "prior art" under the Patent Act. Calgon's Opposition, p. 5. Only the materiality of the withheld prior art and the intent of Calgon in withholding the prior art references are currently at issue.

[3] This Opinion makes no conclusions regarding whether the specific communications included in Document Categories A-GG in the First Lauer Decl. at Ex. 1 were made in furtherance of the fraud on the Patent Office.

already on record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim. . . . " 37 C.F.R. § 1.56(b).[4] Materiality is "judged based upon the overall degree of similarity between the omitted reference and the claimed invention in light of the other prior art before the examiner." Baxter Int'l v. McGaw, Inc., 149 F.3d 1321, 1328 (Fed. Cir. 1998).

FYEO's renewed motion focuses primarily on whether Calgon and Dr. Walter Tramposch ("Tramposch"), the inventor of the '628 patent, intentionally concealed the CCI Brochure, a sales brochure prepared by Calgon's wholly owned subsidiary, Charcoal Cloth International ("CCI"). Calgon maintains that Tramposch did not disclose the CCI Brochure to the Patent Office because he believed it was not material to the claimed invention as it lacks the feature of "attachment." FYEO's new evidence, in combination with the evidence already presented, establishes that the CCI Brochure and the 3M Strips were highly material and Calgon's reason for non-disclosure is unsupportable. FYEO's showing is sufficient to demonstrate the fraud necessary to pierce the privileges asserted.

In its renewed motion, FYEO argues that Calgon's contention that withheld prior art would not have been material to issuance of the patent is objectively unsupportable because: (1) the CCI Brochure teaches every element of the claimed invention, including the attachment feature by virtue of its use of the word "lining, and thus, neither Calgon nor the inventor could have failed to recognize its materiality;" (2) the attachment feature is without any significance and Calgon knows it; and (3) the CCI Brochure is highly material and Calgon and Dr. Tramposch knew it.

---

[4] The Court notes that at page 15 of its April 24, 2003 Memorandum Opinion and Order, it incorrectly cited a pre-1992 standard for materiality. However, the current standard for materiality "was not intended to constitute a significant substantive break with the previous standard." Hoffmann La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1366 n.2 (Fed. Cir. 2003). This Court's finding of materiality and the outcome of FYEO's motion to compel would have been the same under either materiality standard.

-4-

The parties sharply contest whether the CCI Brochure teaches every element of the claimed invention. FYEO argues that the use of the term "lining" in the CCI Brochure clearly contemplates using a method of attachment. FYEO also argues that Tramposch's use of the word "lined" in the patent is proof that he knew the CCI Brochure's use of the term "lined" would include attachment. Calgon presented evidence that the dictionary definitions for the words "attach" and "line" are different and they are not synonyms of each other. Calgon has additionally presented evidence from current or former CCI employees (Dr. Grint and Ian Johnson) indicating that CCI did not do any work on "attaching" activated carbon to an enclosure to prevent tarnish before the brochure was created. Thus, Calgon argues, the use of the word "lining" in the CCI Brochure did not mean the same thing as attachment. The Court declines to decide whether the purported attachment distinction exists between the claimed invention and the known prior art because FYEO has made an adequate showing that the attachment feature was insignificant. Thus, neither Calgon nor Tramposch could have failed to recognize the materiality of the CCI Brochure and the 3M Strips regardless of whether the CCI Brochure teaches attachment.

The evidence presented by FYEO shows that attachment of activated carbon to an enclosure to prevent metal tarnish would have been an obvious modification of the prior art. Calgon's testimony that attachment was a key or critical limitation fails to sufficiently rebut the other evidence demonstrating that "attachment" is inconsequential to materiality. Evidence in the record also establishes that Calgon and Tramposch knowingly withheld highly material information about the CCI Brochure and the 3M Strips from the Patent Office.

It is undisputed that Calgon was aware of the CCI Brochure and the 3M Strips prior to the filing of the '628 patent application and deliberately decided not submit these references to the Patent Office. Calgon's patent application was prepared based on a report prepared by the inventor (the

"Tramposch Report") just months before the filing of the patent. The Tramposch Report contains many references to prior uses of activated carbon as an adsorbent, including the CCI Brochure. The CCI Brochure shows activated carbon cloth ("ACC") used in storage and display cases. In his Report, Tramposch identified the CCI Brochure as an example "where ACC has been used to protect fine jewelry and antiquities from the effects of atmospheric contaminants." Dr. Turk Decl. at ¶ 54. The inclusion of the CCI Brochure with the Tramposch Report is strong proof that Tramposch recognized the relevance of the CCI Brochure to his invention.

In January 2000, Tramposch and Calgon used the CCI Brochure to assure its potential customer, QVC, that the use of activated carbon in jewelry boxes by Calgon was established technology. Tramposch attached the CCI Brochure to the Tramposch Report given to QVC. Tramposch "recognized that the CCI Brochure described a use of activated carbon that occurred in the past, even touted that brochure as showing that Calgon's proposal to attach activated carbon to the interior of jewelry boxes was a proven technology." Turk Decl. at ¶ 55.[5] In March 2000, Calgon filed the '628 patent and did not mention the CCI prior art in the patent. In fact, all references to the CCI prior art were deleted while many sections of the Tramposch Report were used almost verbatim in the patent application. This inconsistent treatment of the CCI Brochure by Calgon provides compelling evidence that Calgon knew the CCI Brochure was material and intentionally concealed it from the Patent Office.

---

[5] Dr. Amos Turk is a Professor Emeritus of the Department of Chemistry at City College of the City of New York. Dr. Turk obtained a B.S. degree in Chemistry from City College of New York in 1937, and a M.A. degree in Physical Chemistry in 1938 and a Ph.D. in 1940 from Ohio State University. From 1992-1995, Dr. Turk served as the Chairman of the American Society for Testing and Materials. Calgon does not dispute Dr. Turk's qualifications as an activated carbon expert. Dr. Turk reviewed the 3M Strips and the CCI Brochure, Calgon's '628 patent and its prosecution history, Tramposch's deposition testimony, and this Court's April 24, 2003 Memorandum Opinion and Order.

Calgon's citation of less relevant prior art to the Patent Office provides additional proof of Calgon's intent to mislead the Patent Office. Calgon disclosed chemical treatment or polishing to remove tarnish and adding a protective film of another stable metal to prevent tarnish, but Calgon did not disclose to the Patent Office any of the prior uses of activated carbon in enclosures discussed in the Tramposch Report. The disclosed methods do not use activated carbon. In addition, neither method discloses the prevention of tarnish in an enclosure or two porous or protective layers of fabric or cloth.

Moreover, the Patent Office put Calgon on notice that the attachment feature was insignificant, and Calgon did not dispute it. Calgon's failure to dispute the Patent Office's finding undermines Calgon's claim that attachment is a critical limitation. Calgon admits that even after Calgon and Tramposch knew that the Patent Office considered attachment inconsequential, they failed to address the attachment feature "in any way whatsoever during the prosecution of the '628 patent." Calgon Opposition, p. 13. The fact that Calgon and Tramposch did not respond to the examiner's position that attachment was not a patentable distinction over existing prior art is relevant evidence that they did not believe the attachment feature was significant. Also, the fact that Calgon did not include the attachment limitation as a requirement in original claims 1-5 and 8-10 is further proof that Calgon knew that attachment is not a key limitation.

Significantly, Calgon does not dispute that Tramposch knew that the CCI Brochure contained the feature that the Patent Office indicated was critical to patentability, namely, an adsorbent "disposed between two porous protective layers of fabric or cloth." Dr. Turk confirmed that the CCI Brochure teaches the use of two porous protective layers of fabric or cloth. Thus, regardless of whether the CCI Brochure teaches attachment, it is undisputed that the CCI Brochure teaches the critical feature of two layers of porous protective fabric or cloth, the feature that the Patent Office stated it did not find in the

prior art. This is further evidence that the CCI Brochure should have been disclosed. Baxter,149 F.3d at 1328 (stating that a difference in a single element, however important to the patent invention, is not automatically dispositive of the issue of materiality because references lacking different elements are often combined to reject an application under 35 U.S.C. § 103). Calgon did not disclose the CCI Brochure later after the Patent Office stated that it did not find any prior art showing two porous protective layers of fabric or cloth.

In addition, Dr. Tramposch believed the 3M Strips teach the use of two porous protective layers of fabric or cloth, the very feature the Patent Office considered critical in allowing the claims of the '628 patent. The 3M Strips contain activated carbon and were sold to prevent tarnish from forming on jewelry in an enclosure, such as a jewelry box. Dr. Tramposch admitted that as of the fourth quarter of 1999, he knew of the 3M Strips which contain activated carbon to prevent tarnish from forming on a metal object in an enclosure. Tramposch dep., p. 18. In fact, Tramposch performed testing on the 3M Strips vis-à-vis the invention disclosed in the '628 patent. Id., p. 279. The only novel feature that the PTO appeared to rely on in allowing the claims to issue was that the adsorbent was "disposed between two porous and protective layers of fabric or cloth." Tramposch testified that the 3M Strips "may" contain two porous or protective layers of fabric or cloth as required by the claims of the '628 patent. Id., pp. 208, 314. The fact that the 3M Strips disclose the very feature that the PTO relied on in allowing the claims supports a conclusion that they are material. Calgon contends that it withheld the 3M Strips from the PTO because Tramposch did not believe they were material as they did not effectively prevent tarnish since they were not attached. Again, Calgon's reliance on the lack of the attachment feature is not credible whether applied to the CCI Brochure or the 3M Strips.

Dr. Amos Turk's declaration strongly supports a finding of materiality. Dr. Turk concluded that the 3M Strips and the CCI Brochure are highly material to the claims of the '628 patent. Dr. Turk

fails "to see how the inventor can even argue that he did not believe that the 3M Strips and the CCI Brochure were important, material references since he knew that these prior art references disclosed the very feature that the Patent Office found allowable in original claim 7." Dr. Turk Decl. at ¶ 33. Dr. Turk opined "these references are so material that one experienced with activated carbon, such as Dr. Tramposch, the inventor of the '628 patent, could not possibly fail to recognize their materiality." Id. ¶ 58. Dr. Turk found Calgon's explanation for not submitting the 3M Strips and the CCI Brochure to the Patent Office, i.e. because of the lack of the attachment feature, "simply implausible" and opined that one experienced with activated carbon as of March 2000, such as Dr. Tramposch, would not believe that the lack of an explicit statement in the CCI Brochure about attachment made the brochure inconsequential or immaterial. Id. ¶¶ 36, 56.

Whether activated carbon is attached to an enclosure is inconsequential to its function or effectiveness. Turk Decl. ¶¶ 41, 43; Grint Decl. ¶24. As Dr. Turk explained, attachment of activated carbon may be desirable if one wishes to keep the activated carbon in a certain position or wishes to place the activated carbon in an area where gravity alone will not keep it in place, but attachment "does not do anything in terms of the function or effectiveness of the activated carbon." Id. ¶ 44. Dr. Turk concluded that "attachment" is "such an inconsequential and obvious modification to the 3M Strips and the CCI Brochure that it cannot reasonably be relied on in asserting the non-materiality of those prior art references." Id. ¶ 38.

Finally, the Patent Office recently rejected the attachment feature as being obvious during the reexamination of the '628 patent. On July 31, 2003, the examiner stated that "it would have been obvious to removably attach the [3M] strip to the interior surface of the enclosure to prevent unwanted movement." Third Decl. of D. Lauer, Ex. 1, p. 4. The examiner's recent finding provides additional proof that the withheld prior art was material to the patentability of the claims of the '628 patent, even

though the rejection has not been made final.[6]

## CONCLUSION

For the reasons stated above, the Court concludes that FYEO has presented adequate evidence that Calgon intentionally concealed the CCI Brochure and 3M Strips from the Patent Office sufficient to allow discovery of privileged materials used in furtherance of the fraud. This is not a finding on the ultimate merits of the fraud issue, but rather a finding that FYEO's showing is sufficient to warrant further inquiry into the withheld documents. FYEO's Renewed Motion to Compel is GRANTED. The status hearing set for December 16, 2003 at 9:45 a.m. stands.

ENTER:

*Nan R. Nolan*
Nan R. Nolan
United States Magistrate Judge

Dated: 12/4/03

---

[6] The Court doubts Calgon's assertion that it had no duty to disclose the CCI Brochure to the Patent Office during the reexamination of its patent because the district court judge ruled that this Court's prior findings on "prior art" and "materiality" are "non-final and non-binding for the purposes of future litigation of these issues." Calgon has cited no authority supporting its assertion that it need not disclose information to the Patent Office until a court makes a final, binding adjudication that an item is material prior art.