IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FOR YOUR EASE ONLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Wayne R. Andersen |
| v. | ) | District Judge |
| | ) | |
| CALGON CARBON CORPORATION, et al., | ) | Case No. 02 C 7345 |
| | ) | |
| | ) | |
| Defendants | ) | |

## **MEMORANDUM ORDER AND OPINION**

This matter comes before the court on plaintiff's motion for a turnover order regarding Home Shopping Network ("HSN") payments following an order of default judgment against defendants Mark Schneider and Product Concepts Company ("PCC"). For the following reasons, the motion is denied.

### **BACKGROUND**

Plaintiff For Your Ease Only ("FYEO") brought suit against defendants Schneider, PCC and Calgon Carbon Corporation ("Calgon") alleging patent infringement and other claims related to the sale of anti-tarnish jewelry boxes. On June 27, 2007, the court entered a default judgment in the amount of $2.1 million against Schneider and PCC who had not opposed the motion for default or appeared in court. An order of final judgment was entered on February 22, 2007. FYEO brought this motion for a turnover order of payments by HSN for the sale of the anti-tarnish jewelry boxes due to debtors Schneider and PCC. The only remaining defendant

1

Calgon in this case opposed the turnover motion, as did Anewco, Inc. ("Anewco"), which is a company wholly-owned by Schneider's brother-in-law, Douglas Fournier. Anewco now holds the rights to the anti-tarnish jewelry boxes sold on HSN. At some point while this motion was pending before the court, HSN made payments to Anewco for the purchase of anti-tarnish jewelry boxes. FYEO seeks turnover of the payments made to Anewco, as well as any subsequent or future payments from HSN for the sales of anti-tarnish jewelry boxes.

In addition to the pleadings, the court held a motion hearing in this matter to determine whether the HSN payments made and owed to Anewco were, in fact, attributable to judgment debtors Schneider and PCC.

## DISCUSSION

### I. Jurisdiction

As a preliminary matter, the court must determine whether this court has jurisdiction over third parties, such as HSN and Anewco. Rule 69(a) of the Federal Rules of Civil Procedure provides in part that:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought. . .

Rule 69(a), however, does not confer jurisdiction, but is a procedural mechanism for a federal court's "exercise of its inherent jurisdiction to enforce its judgment in a supplemental proceeding." *Argento v. Melrose Park,* 838 F.2d 1483, 1487 (7th Cir. 1988). Using that inherent power, the court may exercise ancillary jurisdiction over subsequent proceedings

involving third parties to assist in the protection and enforcement of federal judgment. *Peacock v. Thomas,* 516 U.S. 349, 356 (1996); *see Yang v. City of Chicago*, 137 F.3d 522-526 (7th Cir. 1998).

II.     **Citation to Discover Assets**

Having found that the court has the jurisdiction necessary to decide FYEO's turnover motion, we now consider the information presented to the court by the pleadings and motion hearing. FYEO served HSN with a citation to discover assets in accordance with Illinois law. 735 ILCS 5/2-1402. Service of the citation creates a lien on upon "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 ILCS 5/2-1402(m).

HSN made payments for anti-tarnish jewelry boxes to Anewco after it was served with a citation to discover assets. If a recipient violates the restraining provision of a citation and transfers the asset, the court "may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this section, or in the amount of the value of the property transferred, whichever is lesser." 735 ILCS 5/2-1402(f)(1). Thus, if the court finds that the payments made to Anewco were property of the judgment debtors, HSN may be held liable to FYEO for the full amount paid.

III.    **Ownership of the Rights**

As noted above, Anewco now claims the rights to the anti-tarnish jewelry boxes sold on television by HSN (the "rights"). The plaintiff argues that the transfer of the rights from PCC to

any subsequent transferees, such as Anewco, was fraudulent and done with the sole intent to defraud creditors in violation of the Uniform Fraudulent Transfer Act (the "UFTA"), 740 ILCS 160/1 *et seq*. If the debtor made the transfer "without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer," that the transfer is fraudulent as to a creditor whose claim arose before the transfer was made. 740 ILCS 160/6(a). Once an asset has been fraudulently conveyed, the UFTA makes voidable that transfer and any subsequent transfers unless a good-faith transferee took for value. *See* 740 ILCS 160/8; 740 ILCS 160/9.

      a. <u>Transfer of the Rights from PCC to Sevenquest</u>

FYEO offered compelling evidence that the transfer of the rights from PCC to Sevenquest, which like PCC was wholly owned by Schneider, was fraudulent. In an email from Schneider to his accountant, Schneider states, "Am I PCC or 7Quest? Technically, I should disband PCC and put it all thru 7Q with ideas to protect me." Schneider's statement indicates his intent to avoid his creditors.

The court may also find a transfer fraudulent if the debtor made the transfer "(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange . . ." 740 ILCS 160/5(a). The UFTA sets forth eleven "Badges of Fraud," which the court may consider to determine "actual intent." A court may presume fraudulent intent if it finds a sufficient number of badges. *Star Ins. Co. v. Risk Mktg. Group, Inc*., 507 F.Supp.2d 942, 947 (N.D. Ill. 2007); *Steel Co. v. Morgan Marshall Indus*., 278 Ill. App. 3d 241, 251 (Ill. App. Ct. 1996). These badges include whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the

transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b). Using this analysis, the court infers that the transfer of the rights from PCC to Sevenquest the court also was fraudulent. The transfer of the rights from PCC to Sevenquest satisfies many badges, although we will discuss only eight:

First, the transfer was to an insider. 740 ILCS 160/5(b)(1). Schneider wholly owned both PCC and Sevenquest.

Second, the debtor retained controlled of the property. 740 ILCS 160/5(b)(2). Schneider's 2004 and 2005 tax returns reflected income for PCC and Sevenquest, respectively. Fournier testified that he received minimal compensation for his work sourcing, handling purchase orders, and delivering the jewelry boxes, while the profits went to Schneider.

Third, the transfer was concealed. 740 ILCS 160/5(b)(3). Leading to the default judgment entered against him, Schneider avoided discovery aimed at disclosing his assets.

Fourth, before transfer was made, the debtor had been sued. 740 ILCS 160/5(b)(4). FYEO brought suit against Schneider and PCC in 2002. Schneider transferred the rights to Sevenquest in 2005, after FYEO had itemized its damages in court filings.

Fifth, the transfer was of substantially all of the debtor's assets. 740 ILCS 160/5(b)(5). As Schneider conveyed to his accountant in the email quoted above and as she testified in her deposition, all of PCC's assets were transferred to Sevenquest or directly to Schneider.

5

Sixth, the debtor absconded. 740 ILCS 160/5(b)(6). Schneider moved to Costa Rica.

Next, the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred. 740 ILCS 160/5(b)(8). As discussed above, all of PCC's assets were transferred, and Schneider wholly owned both companies.

Finally, the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. 740 ILCS 160/5(b)(9). As discussed above, PCC was left with no assets following the transfer to Sevenquest.

Given that the transfer from PCC to Sevenquest satisfies a sufficient number of factors in the Badges of Fraud test, the court finds that the transfer of all of PCC's assets, including the rights, from PCC to Sevenquest was done fraudulently with the intent to avoid creditors such as FYEO. Such a transfer would be voidable by the court pursuant to 740 ILCS 160/8.

b. <u>Transfer of the Rights from Sevenquest to Anewco</u>

Though the court has found that the transfer from PCC to Sevenquest was fraudulent, that does not end the inquiry because the rights are now held by Anewco. FYEO must show that the transfer from Sevenquest to Anewco is also voidable and does not fall within the limitations set forth in 740 ILCS 160/9, which prevent the court from voiding a subsequent transfer in the case of a good-faith transferee who took for value.

In support of its argument that the judgment debtor fraudulently transferred the anti-tarnish jewelry box rights a second time, FYEO offers the January 11, 2007 letter from Schneider to HSN that purports to transfer all rights to Anewco. In that letter, Schneider states that, effective immediately, Anewco and Fournier "will be assigned the future rights to manufacture the anti-tarnish Jewelry Box business at HSN known as Prestige." No mention is made of any consideration given to Schneider or Sevenquest in exchange for these rights.

However, the court finds credible testimony from Anweco's owner, Fournier, who stated that he had an oral agreement that provided that he would eventually assume the anti-tarnish jewelry box business from Schneider after three years. This, Fournier explained, is the reason that he had earlier performed sourcing and coordinated the sale of the jewelry boxes—a significant amount of work for Schneider in exchange for minimal compensation. Fournier denied funneling any portion of the HSN payments he had received to Schneider and declared that he currently retains no business affiliations with Schneider or any successors to PCC. We found Fournier's testimony to be credible.

## CONCLUSION

Having found that Anewco was a good faith transferee for value of the rights, the court has no reason to void the transfer from Sevenquest to Anewco. Since HSN did not transfer, nor currently holds any assets of the judgment debtors concerning the rights to the anti-tarnish jewelry boxes sold on HSN, plaintiff's motion for a turnover order [233] is denied.

It is so ordered.

_____
Wayne R. Andersen
District Judge

Dated: November 13, 2007