# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FOR YOUR EASE ONLY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 7345 |
| ) | |
| CALGON CARBON CORPORATION, ) | Wayne R. Andersen |
| and PRODUCT CONCEPTS ) | District Judge |
| COMPANY, and MARK SCHNEIDER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on plaintiff For Your Ease Only's ("FYEO") motion for a turnover order pursuant to Federal Rule Civil Procedure 69(a). As judgment creditor on an underlying matter, FYEO claims that it is entitled to 15% of the revenues from Calgon Carbon Corporation's ("Calgon") sale of the PreZerve line of jewelry organizers sold on QVC. For the reasons stated below, the motion [329] is denied.

## BACKGROUND

On February 22, 2007, FYEO obtained a default judgment against Mark Schneider ("Schneider") and Product Concepts Company ("PCC"). In March 2007, FYEO served a Citation to Discover Assets on Calgon in accordance with Illinois law, 735 Ill. Comp. Stat. 5/2-1402 (2009). Calgon responded claiming that it held no assets or income of the judgment debtors. However, FYEO argues that it is entitled to 15% of the revenue from Calgon's sale of the PreZerve line of jewelry organizers pursuant to a contract between Calgon and Synergy, to which Schneider allegedly was a third party beneficiary.

Prior to 2004, Calgon and PCC had an agreement, which provided that PCC would receive a 15% commission on revenues from the sale of PreZerve products. *See* 3/13/09 Hearing Transcript at 16. In 2004, Schneider initiated a joint separation agreement ending the contract between PCC and Calgon. *Id.* at 18. After discussions with Schneider and Doug Fournier ("Fournier"), Schneider's brother-in-law, Calgon began making 15% commission payments to Synergy, a company wholly owned and operated by Fournier. *Id.* at 18-19. A contract between Calgon and Synergy provided that Calgon would pay 15% commission payments and give Synergy a 40% ownership interest in the "PreZerve Venture." 3/13/09 Hearing Exhibit 12. The contract included several obligations on the part of Synergy, including working on new product development, sales, pricing strategies, consulting, and sourcing. *Id.* Although the contract was between Synergy and Calgon, several internal accounting notations indicated that commission payments were for the benefit of Schneider. 3/13/09 Hearing Exhibits 16, 17.

In addition to the contract between Synergy and Calgon, Fournier had reached an oral agreement with Schneider under which, after paying expenses and Fournier's compensation, Synergy would pay its profits, including all of the commission it received under the Calgon contract, to Schneider or his wholly owned corporation, Sevenquest. 1/26/09 Smith Deposition at 22-24; 10/1/07 Hearing Transcript at 74-75. This court previously found Fournier's testimony as to this agreement credible, accepting that Fournier had agreed to make payments to Schneider in return for a future assignment of the Home Shopping Network ("HSN") business at the end of a three year period. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2007 U.S. Dist. LEXIS 83744, at *4 (N.D. Ill. Nov. 13, 2007). Although the Seventh Circuit recently reversed this court's legal conclusion that the transfer of the HSN business from Sevenquest to Anewco, Fournier's new company, was not voidable, the factual findings were accepted by the Court of

Appeals. *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717 (7th Cir. 2009). Calgon was aware that Schneider was assisting Synergy by teaching Fournier the business, but had no knowledge of the specific arrangement under which Synergy paid Schneider or Sevenquest. 3/13/09 Hearing Transcript at 20-21

By January 2007, Synergy had stopped performing under the contract with Calgon. 3/13/09 Hearing Transcript at 104-05. At this time, Calgon stopped paying Synergy a commission, however, Calgon created an internal reserve equal to the maximum commissions that would have been payable to Synergy, had Synergy not abandoned its performance under the contract, through June 2007. *Id.* at 115. The three-year contract between Synergy and Calgon was set to terminate in June 2007. *Id.* The contract provided that unless notice of termination was received from either party at least thirty days prior to the termination date, the contract would automatically renew for a term of one year. 3/13/09 Hearing Exhibit 12. In May 2007, Calgon provided Synergy with a notice of termination of the contract. 3/13/09 Hearing Exhibit 23.

## DISCUSSION

**A.      Motion for Turnover Standard**

The proper service of a citation to discover assets creates a lien on "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 Ill. Comp. Stat. 5/2-1402 (2009). As a judgment creditor of Schneider and PCC, FYEO has no greater right to funds held by Calgon than Schneider and/or PCC would have. *Bank of Homewood v. Gembella,* 199 N.E.2d 293, 295 (1964). In fact, FYEO would have equal rights as those of the judgment

debtors because the judgment creditor "stands in the shoes of the judgment debtor." *Pak v. Admiral Ins. Co.*, 2004 U.S. Dist. LEXIS 25066, at *14 (N.D. Ill. Dec 9, 2004).

The contract at issue in this case is between Calgon and Synergy. FYEO claims that it is entitled to (1) money that Calgon put in reserve, representing commissions unpaid from January 2007 through June 18, 2007, (2) unpaid commissions from June 2007 through December 2008, and (3) 15% of all sales from December 2008 until the judgment is paid in full. As the petitioner, FYEO bears the burden of showing that Calgon possesses assets belonging to the judgment debtors. *Schak v. Blom*, 777 N.E.2d 635, 639 (2002). FYEO cannot satisfy its burden by merely showing that Calgon paid money to a third party, which was subsequently paid to Schneider. *See, e.g.*, *Lorillard Tobacco Co. V. Canstar (USA), Inc.*, 2005 U.S. Dist. LEXIS 16163 (N.D. Ill. 2005) (dismissing citation against bank that was source of funds paid by third party to judgment debtor).

It is undisputed that prior to the citation, Calgon was obligated by contract to pay, and did pay, a commission on PreZerve sales to Synergy. It is also undisputed that Synergy passed on much of those commission payments to Schneider, through an oral contract between Fournier and Schneider. The sole issue, however, is whether Schneider and/or PCC have a legally enforceable right directly against Calgon to recover the 15% commission. If this court finds that Schneider or PCC has a legal right to any of the above assets, FYEO would be entitled to collect from Calgon.

**B.      Schneider Has No Legal Right to the 15% Commission Payments Made to Synergy**

FYEO asserts that Schneider has a legal right to the commission payments because either (1) he was involved in the development of PreZerve products that Calgon continues to sell, or (2) Schneider was a direct third party beneficiary of the Calgon-Synergy contract.

### 1. The 15% commission was part of the Calgon-Synergy contract and was not a royalty based on development of the product

FYEO asserts that Schneider is entitled to the 15% commission because the payments acted as a royalty in return for Schneider's past assistance in development and because of his role in the formation of the QVC-Calgon relationship. Schneider has never owned any intellectual property rights in the PreZerve line, and Calgon is the owner of the registered trademarks. 3/13/09 Hearing Transcript at 72-73. While it may be true that Schneider was instrumental in the formation of the QVC-Calgon relationship, the 15% commission in question was part of a bilateral contract between Synergy and Calgon. That contract required something on the part of Synergy in return for the payments, including overseeing new product development, consulting, and sourcing. Further, the evidence indicates that products sold by Calgon have been developed through a process involving several participants, and that sometimes Schneider was not involved. 3/13/09 Hearing Transcript at 63-65.

There is no evidence that Calgon intended the commission payments to be in return for previous development work. In fact, the legally enforceable right to a commission from Calgon was created by contracts between Synergy, and, previously, PCC. Those rights are defined by the respective contracts, which include obligations on the part of the contracting parties in return for the commission payments.

### 2. Schneider was not a direct third party beneficiary of the Calgon-Synergy contract

Schneider is not a party to the contract between Calgon and Synergy. FYEO claims that Schneider is entitled to the 15% commission because he is a direct third party beneficiary of the Calgon-Synergy contract. A direct third party beneficiary, one who may enforce a contract, is "a person who, although not a party to the contract, the contracting parties *intended* to benefit from

the contract." *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 930 (7th Cir. 2003) (emphasis in original). To determine if a party is a direct third party beneficiary, the court must look to the understandings of the parties at the time of the contract's execution, as well as the intent based on the contract as a whole. *Id.*

Synergy was wholly owned and operated by Fournier. Synergy received a 15% commission under its contract with Calgon and provided a number of services in return for that commission, including work on new product development, sales and pricing strategies, consulting on business strategy, assistance with on-air marketing presentations, assistance in sourcing, and purchasing of Calgon's product. With the exception of two checks mistakenly issued to Schneider by a clerk in Calgon's account payable department, Calgon made all payments for those services by electronic transfer to Synergy. Further, comments by employees referring to the commissions as Schneider's payments is not proof that Calgon intended the payments for the benefit of Schneider, especially in light of the contract with Synergy.

While it is true that Calgon knew Schneider would be helping teach Fournier the business and that Synergy was paying Schneider something for his services, there is no evidence that Calgon knew how much or under what arrangement those payments would be made. As it turned out, after paying expenses and Fournier's compensation, Synergy paid its profits, including all of the commission it received under the Synergy contract, to Schneider or Sevenquest during 2004, 2005, and 2006. This court previously heard, and found credible, testimony from Fournier regarding an oral contract between him and Schneider, whereby Fournier (or Synergy) would pay Schneider (or Sevenquest) the profits of Synergy for three years in return for an assignment of the HSN business at the end of that period. At the end of the three year period, Synergy stopped paying Schneider and Fournier focused all of his attention on

operating a new company he established for the purpose of handling the HSN business assigned to his company. Having found that Synergy was a legitimate entity and that it was a separate agreement which obligated Fournier to make payments to Schneider, the evidence does not establish that Schneider was a direct third party beneficiary of the Calgon-Synergy contract.

C.     **PCC Has No Legal Right to the 15% Commission Payments Made to Synergy**

Years before the default judgment was entered and the citation served on Calgon, PCC had a contract right to receive payments from PreZerve sales. Those rights ended by early 2004 at the latest because the contract was terminated, and PCC stopped performing after termination. Under the original contract, Calgon shared its profit with PCC, however, that was reduced to a percentage commission in early 2003 when PCC and Calgon reallocated responsibilities. All contracts with PCC were terminated by agreement of the parties in December 2003. Further, PCC has performed no services for Calgon under the agreements since the end of 2003. Because PCC stopped earning commission payments several years before the citation was served, and because all contracts between PCC and Calgon are terminated, PCC has no legal right to any commission payments made by Calgon.

## CONCLUSION

For the reasons set forth in the court's Memorandum, Opinion and Order, FYEO's motion for a turnover order as to Calgon Carbon Corporation [329] is denied. Because Schneider and/or PCC have no legal right to the 15% commission payments Calgon made to Synergy, FYEO has no right to the $99,426 Calgon has in reserve or to any future commission payments.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: October 6, 2009